# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

TAP ROCK RESOURCES, LLC and
TAP ROCK MINERALS, LP
n/k/a CIVITAS DE BASIN MINERALS, LP,

     Plaintiffs,

v.   No. 2:23-cv-850-WJ-JHR

MARATHON OIL PERMIAN LLC,

     Defendant.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE
## PURSUANT TO §1404(a)

**THIS MATTER** comes before the Court upon Defendant's Motion to Transfer Venue, filed October 3, 2023 **(Doc. 5)**. Having reviewed the parties' pleadings and the applicable law, the Court finds Defendant's motion is well-taken. Accordingly, it is **GRANTED**.

## BACKGROUND

Plaintiffs' Complaint (**Doc. 1-2**) involves the equitable reformation of a contract ("the Agreement") involving oil and gas interests ("the Assignment") in certain property located in Eddy County, New Mexico. **Docs. 5-1 & 6-1**. Plaintiffs originally filed their Complaint in the Fifth Judicial District Court, County of Eddy, State of New Mexico, **Doc. 1-2**, but Defendant removed the case to federal court (**Doc. 1**). Defendant then filed a Motion (**Doc. 5**) for a change of venue pursuant to 28 U.S.C. §1404(a) from this Court to the United States District Court for the Southern District of Texas, Houston Division in accordance with the Agreement's forum selection clause.

**I. History of Litigation**

The Court offers a summary of the case's litigation history, to be considered within the context of Defendant's request for transfer:

**A. The 2019 lawsuit in the District of New Mexico**

On February 5, 2019, Marathon Oil Permian LLC ("Marathon") filed a Complaint against Tap Rock Resources LLC ("TRR") in the United States District Court for the District of New Mexico (**Doc. 1-2 at 8**), Cause No. 1:19-cv-00097. *Id*. Shortly after the filing of the 2019 Complaint, TRR and Marathon began settlement negotiations. *Id.* **at 9**. During that time, the Parties stipulated to a motion to stay pending "final resolution." **Doc. 26** (Cause No. 19-cv-00097). Negotiations lasted several months—with the Agreement being signed, entered into, and effective July 22, 2019. **Doc. 5 at 5**. On August 20, 2019, Marathon filed a notice of dismissal with prejudice regarding its claims against TRR. **Doc. 29** (Cause No. 19-cv-00097).

**B. The 2019 settlement agreement**

Two specific provisions from the 2019 Agreement are relevant here. First, Marathon and TRR agreed the Agreement sets forth the "entire" agreement and "fully supersedes any and all prior agreements, arrangements, or understandings" between the Parties. **Doc. 5 at 6–7; Doc. 6-1 at 7**. The Parties also agreed that:

> This Agreement shall be construed in accordance with the laws of the State of Texas, regardless of Texas's choice of law provisions. Any cause of action seeking the interpretation or enforcement of this Agreement or any of its terms shall be brought in the state district courts of Harris County, Texas, or the federal district courts for the Southern District of Texas, Houston Division. Notwithstanding anything to the contrary contained herein, venue for any cause of action related to real property over which a court in Texas does not have jurisdiction may be brought in New Mexico state or federal courts.

**Doc. 5 at 3** (quoting Ex. B); **Doc. 6-1 at 8**.

## II. Legal Standard

The venue statute states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. §1404(a). But the usual Section 1404 calculus[1] changes when a transfer motion is predicated on a forum selection clause. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). The presence of a valid (and mandatory) forum selection clause changes a district court's usual Section 1404(a) analysis. *Id.* at 63. Absent a showing "of inconvenience so serious as to foreclose a remedy," a valid forum selection clause will be enforced. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 594–95 (1991). Thus, when a Plaintiff "defies the forum-selection clause by bringing suit in a forum not bargained for by the parties, the Plaintiff's choice of forum merits no weight." *Weathers v. Circle K Stores, Inc.*, 434 F. Supp. 3d 1195, 1207 (D.N.M. 2020) (internal citations and quotations omitted).

## DISCUSSION

Is this "an action affecting real property in Eddy County, New Mexico," (**Doc. 21 at 12**) as Plaintiffs claim, or is this an action "to reform the terms of the Settlement Agreement" (**Doc. 5 at 1**) as Defendant claims? For the reasons below, the Court finds the Defendant's argument carries the day.

---

[1] In these circumstances, district courts should adjust their usual § 1404(a) analysis in three ways: (1) the Plaintiff's choice of forum merits no weight; (2) a court should not consider arguments about the Parties' private interests; and (3) the original venue's choice of law rules do not apply. *See Atl. Marine Constr. Co., Inc.*, 571 U.S. at 63–65.

**I. Jurisdictional Considerations**

The only real limitation on the Court's discretion to transfer a case under 28 U.S.C. § 1404(a) is the requirement that the new forum be a "district or division where [the case] might have been brought." 28 U.S.C. § 1404(a). Obviously, this contract reformation case could have been brought in "state district courts of Harris County, Texas, or the federal district courts for the Southern District of Texas, Houston Division." **Doc. 5 at 3; Doc. 6-1 at 8**. Thus, this consideration does not place any limitation on the Court's discretion to transfer the instant case. Although much argument is made in the pleadings about the local action doctrine, "the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature." 28 U.S.C. § 1391(a)(2); *see* **Doc. 23 at 2**. Assuming the local action doctrine is applicable, however, Plaintiffs' argument still fails because this is an *in personam* transitory contract dispute seeking an equitable remedy.

**II. Local Action Doctrine**

A court must have jurisdiction over both the subject matter and the parties. *Ins. Corp. of Ir., Ltd. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 701 (1982) (citing *Thompson v. Whitman*, 85 U.S. (14 Wall.) 457, 465 (1874)).

Because the courts are divided on the question of whether the local action doctrine is jurisdictional, the Court will presume it is—thereby giving Plaintiffs the benefit of the doubt. *See infra* ¶ II.B. Assuming, then, that the local action doctrine affects jurisdiction rather than venue, the Court must decide whether this action is local or transitory in nature. *See* **Docs. 5, 21, 23**.

**A. Brief history of the local action doctrine**

Prior to the fifteenth century, jurors in England were chosen from the vicinity of the events at issue. *See* June Entman, *Abolishing Local Action Rules: A First Step Toward Modernizing*

*Jurisdiction and Venue in Tennessee*, 34 U. MEM. L. REV. 251, 256–57 (2004) (citing William H. Wicker, *The Development of the Distinction Between Local and Transitory Actions*, 4 TENN. L. REV. 55, 58–62 (1926)). As Blackstone explained, local actions involved "possession of land," whereas transitory actions dealt with "injuries that might have happened any where." 3 WILLIAM BLACKSTONE, COMMENTARIES ON THE LAWS OF ENGLAND 294 (1768). As a practical matter, courts declined to act *in rem* with respect to extraterritorial property. *See Mostyn v. Fabrigas*, 98 Eng. Rep. 1021, 1029 (K.B. 1774).

Nevertheless, even English courts of equity were not constrained from entering *in personam* decrees that affected parties' rights in real property. *See Penn v. Lord Baltimore*, 27 Eng. Rep. 1132 (Ch. 1750) (granting specific performance of an agreement settling the boundary between lands in Maryland and Pennsylvania). The United State Supreme Court adopted this legal reasoning in the case of *Massie v. Watts*, 10 U.S. (6 Cranch) 148 (1810), finding that Kentucky had subject matter jurisdiction over Plaintiff's suit to recover lands in Ohio because the suit was not a local action since it dealt with a contract dispute. *Id.* at 158–60.

Firmly established under English common law, the local action doctrine was then "imported" into the jurisprudence of this country in 1811. *Prawoto v. PrimeLending*, 720 F. Supp. 2d 1149, 1152 (C.D. Cal. 2010). As Chief Justice John Marshall stated, actions "are deemed transitory, where transactions on which they are founded, might have taken place anywhere; but are local where their cause is in its nature necessarily local." *Livingston v. Jefferson*, 15 F. Cas. 660, 664 (C.C.D. Va. 1811) (No. 8,411). From this point forward, courts in the United States have referred to the local action doctrine as jurisdictional. *See Casey v. Adams*, 102 U.S. 66 (1880); *Ellenwood v. Marietta Chair Co.*, 158 U.S. 105 (1895); *Fall v. Eastin*, 215 U.S. 1 (1909).

However, even against this jurisdictional backdrop, courts have routinely decided actions involving[2] real property can be transitory. *See Dull v. Blackman*, 169 U.S. 243, 246–47 (1898) (explaining a dispute that did "not operate directly upon the lands" can be brought in a different state).

**B. Status of the local action doctrine after the amendment of 28 U.S.C. § 1391**[3]

In December 2011, Section 1391(a) was amended to remove any distinction between local or transitory actions. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, 135 Stat. 758 (2011). The statute states: "the proper venue for a civil action shall be determined without regard to whether the action is local or transitory in nature." 28 U.S.C. § 1391(a)(2). Clearly this language was aimed at curtailing the local action doctrine—but its effect has been unclear.

Currently, courts are split as to whether the local action doctrine rule affects venue or jurisdiction. Some courts have held the Act only eliminated the local action doctrine as a rule of venue[4] that still lives on by way of subject matter jurisdiction; whereas other courts have acknowledged the Act eliminated[5] the doctrine entirely.

---

[2] *See Bigio v. Coca-Cola Co.*, 239 F.3d 440 (2d Cir. 2000) (deciding a conversion claim was not subject to the local action doctrine); *In re School Asbestos Litigation*, 921 F.2d 1310 (3d Cir. 1990) (determining asbestos claims for damage to real property was not local action); *Sax v. Sax*, 294 F.2d 133 (5th Cir. 1961) (deciding a suit to undo a fraudulent conveyance of property was not subject to local action); *Raphael J. Musicus, Inc. v. Safeway Stores, Inc.*, 743 F.2d 503 (7th Cir. 1984) (explaining that specific performance of a contract involving real property does not implicate the local action doctrine).

[3] For a critique of the continued application of the local action doctrine, *see* Jeff Rensberger, *Jefferson's Ghost: The Local Action Rule in Federal Courts*, 44 CARDOZO L. REV. 6 (forthcoming 2023). In this article, Rensberger argues that the local action doctrine was based on an antiquated limit of a court's service of process that no longer exists. He goes on to assert that Congress abolished the rule in 2011 and it is nothing more than a "dead" rule that "haunt[s] litigants." Put another way, the current status of the local action doctrine is a "fugazi." In the Wolf of Wall Street, incumbent stockbroker Mark Hanna (played by Matthew McConaughey) defined the term "fugazi" to rookie Jordan Belfort (played by Leonardo DiCaprio) in the following way: "Fugayzi, fugazi; it's a whazy, it's a woozie. It's fairy dust. It doesn't exist." THE WOLF OF WALL STREET (Paramount Pictures 2013).

[4] *See e.g.*, *Hayes v. Gulf Oil Corp.*, 821 F.2d 285, 291 (5th Cir. 1987); *Eldee-K Rental Props., LLC v. DIRECTV, Inc.*, 748 F.3d 943, 948–49 (9th Cir. 2014).

[5] *See e.g.*, *Greeley v. Walters*, No. CIV. 10-5003, 2011 U.S. Dist. LEXIS 28917, at *1 (D.S.D. Mar. 16, 2011) (finding subject matter jurisdiction "premised upon diversity of citizenship and damages in excess of $75,000" without regard for the local action doctrine); *Fisher v. Va. Elec. & Power Co.*, 243 F. Supp. 2d 538, 557–59 (E.D. Va. 2003) (finding

Equally muddying the waters is the application of the *Erie* doctrine to the local action determination. *See* Jeff Rensberger, *Jefferson's Ghost: The Local Action Rule in Federal Courts*, 44 CARDOZO L. REV. 6 (forthcoming 2023) (explaining some courts apply state law and others apply federal law); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Under the *Erie* doctrine, a federal court sitting in diversity must apply state substantive law and federal procedural law. *Id.* at 78. The local action doctrine often rears its head as an aspect of the *Erie* doctrine in this way. Some courts have determined the local action doctrine is state substantive law, whereas other courts have determined the local action doctrine is federal procedure.[6]

Although the Tenth Circuit has not addressed this issue, at least one district court determined the local action doctrine was substantive state law (albeit, pre-2011). *See Centennial Petrol., Inc. v. Carter*, 529 F. Supp. 563, 565 (D. Colo. 1982).

**C. Distinction between local actions and transitory actions**

Assuming, then, that the local action doctrine affects jurisdiction rather than venue, the Court must decide whether this action is local or transitory in nature. *See* **Docs. 5, 21, 23**.

At its core, the local action doctrine concerns the distinction between local and transitory actions that existed in common law. *See* 15 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3822 (2d ed. 1986). If the dispute directly involves real property, then the local action doctrine applies; but subject matter jurisdiction may exist outside

---

the "arguments in favor of treating the local action doctrine as a matter of venue [as] many, timely, and moving"); *Hallaba v. Worldcom Network Servs. Inc.*, 196 F.R.D. 630, 648 (N.D. Okla. 2000) ("[T]he local action doctrine affects venue and not subject matter jurisdiction."); *see also Rowe v. Aurora Com. Corp.*, No. 13-21369, 2014 U.S. Dist. LEXIS 105186, at *7–8 (S.D. W.Va. Aug. 1, 2014) (noting the split between the local action doctrine as jurisdictional or venue), *aff'd*, 599 F. App'x 95 (4th Cir. 2015).

[6] *Compare Hayes*, 821 F.2d at 287–88 (finding the local action doctrine is a question of state substantive law); *Gen. Elec. Cap. Corp. v. E. Coast Yacht Sales Inc.*, 757 F. Supp. 19, 20 (E.D. Pa. 1991) (same); *Minichiello Realty Assocs., Inc. v. Britt*, 460 F. Supp. 896, 897 (D.N.J. 1978) (same), *with Eldee-K Rental Props., LLC*, 748 F.3d at 951 (finding California's procedural rules have "no effect on our analysis of our own subject matter jurisdiction"); *Tr. Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1149 n.8 (5th Cir. 1991) (same); *Fisher*, 243 F. Supp. 2d at 545 (same).

the territorial boundaries of the state in which the land is located if the claim is merely a transitory action. *See L'Invincible*, 14 U.S. (1 Wheat.) 238, 242 (1816) ("An injury of this nature is either to be redressed by a process *in rem* or *in personam*, and in either case, application must be made where the thing, or person, is found."); *Ellenwood*, 158 U.S. at 107.

> The Supreme Court recently explained the local action doctrine as follows:
>
> An action *in rem* that claimed an interest in immovable property was usually treated as a local action that could be brought only in the jurisdiction where the property was located . . . . Meanwhile, an *in personam* suit against an individual for injuries that might have happened any where was generally considered a transitory action that followed the individual. All of which meant that a suit could be maintained by anyone on any claim in any place the defendant could be found.

*Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. 2028, 2034 (2023) (cleaned up). An *in personam* action adjudicates the "rights and obligations of individual persons or entities." *Pennoyer v. Neff*, 95 U.S. 714, 727 (1877). Essentially, actions are transitory when the underlying allegations could have occurred anywhere. *Livingston*, 15 F. Cas. at 664 ("It is admitted, that on a contract respecting lands, an action is sustainable wherever the defendant may be found."). On the contrary, actions involving "a naked question of title" as to land are local. *Massie*, 10 U.S. (6 Cranch) at 158.

**D. Application of the local action doctrine to the instant case**

Plaintiffs contend that the reformation of the Assignment of oil and gas leases incorporated into the Agreement is a "local action." **Doc. 21 at 5–6**. They further alleged that "Federal and state courts in Texas lack subject-matter jurisdiction to adjudicate title to interests in real property located outside Texas." ***Id.* at 4–5**. Plaintiffs hang their hat, in part, on the holding of *Devon Energy*, which explained the Texas state court lacked subject matter jurisdiction to adjudicate title to realty in another state. *Devon Energy Prod. Co., L.P. v. KCS Res., LLC*, 450 S.W.3d 203, 216 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). Defendant aptly points out that *Devon Energy* is distinguishable from this suit because it does not involve a "naked question of title." *Id.*

8

at 217 (quoting *Protech of Tex., Inc. v. BP Oil Pipeline Co.*, No. 01-95-00270-CV, 1995 Tex. App. LEXIS 4114, at *6 (Tex. App.—Houston [1st Dist.] Dec. 14, 1995, pet. denied)); **Doc. 23 at 7**. In *Protech*, the Texas Court of Appeals relied on *Massie* and determined it had subject matter jurisdiction in a case involving real property because the claims were based in tort, contract, and quasi-contract instead of a "naked question of title." *Protech of Tex., Inc.*, at *6 (quoting *Massie*, 10 U.S. (6 Cranch) at 158). In evaluating the facts alleged and relief sought, the *Protech* Court decided a contract claim involving a pipeline in Kentucky could be heard in Texas. *Protech of Tex., Inc.*, at *9–10.

The "lack of a particular remedy or cause of action in the alternative forum" does not render that venue inadequate. *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1175–77 (10th Cir. 2009). Like the Plaintiff in *Yavuz*, the Plaintiffs here conflate their possible remedies with the nature of their lawsuit. A court, acting pursuant to *in personam* jurisdiction of a transitory action can order a remedy that affects real property. In fact, "equity acts *in personam*." *Wilhelm v. Consol. Oil Corp.*, 84 F.2d 739, 746 (10th Cir. 1936) (citing *Hart v. Sansom*, 110 U.S. 151, 154 (1884)). In this case, Plaintiffs remedy sought is "equitable reformation" (**Doc. 21 at 8, 16–17**). "Generally, if not universally, equity jurisdiction is exercised *in personam*, and not *in rem*." *Hart*, 110 U.S. at 154. Contract reformation is an equitable remedy. *See United States v. Milliken Imprinting Co.*, 202 U.S. 168, 173 (1906) ("Reformation is not an incident to an action at law, but can be granted only in equity."); *CIGNA Corp. v. Amara*, 563 U.S. 421, 440 (2011) (explaining the power to reform contracts is a "traditional power of an equity court"); *Mutual of Omaha Ins. Co. v. Russell*, 402 F.2d 339, 344 (10th Cir. 1968) (same); *Richard v. Anadarko Petrol. Corp.*, 850 F.3d 701, 708 (5th Cir. 2017) (same).

Thus, equitable reformation is not automatically an *in rem* action simply because real property is involved. *Waters v. JPMorgan Chase Bank (In re Waters)*, No. 09-bk-13537, 2013 Bankr. LEXIS 3380, at *7 (Bankr. M.D. Fla. Aug. 20, 2013); *Ely v. Smith*, 764 F. Supp. 1413, 1417 (D. Kan. 1991). Although the Complaint in the case at bar alleges the dispute affects property rights, the actual claim is one of contract interpretation—thus, this is an *in personam* action. *See Radioshack Corp. v. Ruffin*, No. 12-2014, 2012 U.S. Dist. LEXIS 22209, at *10 (D. Kan. Feb. 22, 2012) ("Although this dispute involves real property, the main issue is one of contract interpretation."); *cf. Shuford v. Anderson*, 352 F.2d 755, 759–61 (10th Cir. 1965) (discussing how a court should consider both the claims and remedies when determining if a case "substantially" or "incidental[ly]" involves real property). Put simply, the Agreement is at issue. The alleged drafting errors, if any, could have occurred anywhere. This makes the contract claim a transitory action *in personam*. Additionally, Plaintiffs' Complaint (**Doc. 5-1 at 11–12**) requests relief in equity. *See Muller v. Dows*, 94 U.S. 444, 449 (1876) (explaining "a court of equity" in one state may exercise personal jurisdiction affecting "land in another State"). As mentioned above, equitable remedies are almost always *in personam* actions. For Plaintiffs to prevail, the Court would need to find that: (1) *Erie* makes the local action doctrine state substantive law; (2) New Mexico's venue statute is jurisdictional; (3) a contract dispute is local and not transitory; (4) an equitable remedy is *in rem*; and (5) that the revisions to Section 1391 are immaterial. This argument proves too much.

Actions that indirectly involve real property, such as reformation of a contract, are *in personam*. *See Rogers v. Webster*, 1985 U.S. App. LEXIS 13968, at *4 (6th Cir. 1985) (unpublished); *Furman v. Mascitti*, 714 F.2d 299, 300 n.3 (4th Cir. 1983). Pursuant to a court's *in personam* jurisdiction, a district court (such as the Southern District of Texas, here) may impose

10

orders upon a party personally even where doing so may indirectly act upon real property in another state. *Fall*, 215 U.S. at 8; *see also Cage v. GDH Int'l, Inc. (In re Great Gulfcan Energy Tex., Inc.)*, 488 B.R. 898, 911 (Bankr. S.D. Tex. 2013) ("[W]here a court lacks *in rem* jurisdiction over the real property in question, a court may exercise personal jurisdiction over a party in order to transfer title to the same property."); *Fox v. Fox*, No. 14-18-00672-CV, 2020 Tex. App. LEXIS 2211, at *9 (Tex. App.—Houston [14th Dist.] Mar. 17, 2020) ("[A] Texas court with jurisdiction over the parties may enforce a party's personal or contractual obligation that indirectly involves property in another state, such as when a Texas court compels a party over whom it has jurisdiction to execute a conveyance of a real property interest located in another state.").

**1. The local action doctrine in Texas**

Plaintiffs aver that Texas law applies to the determination of whether the United States District Court for the Southern District of Texas has subject matter jurisdiction. **Doc. 21 at 5 n.16**. But, as Defendant notes, Plaintiffs' action is not one that New Mexico requires to be tried within its geographic bounds. **Doc. 23 at 5–6**.

The United States Court of Appeals for the Fifth Circuit maintains a "questionable distinction"[7] between the local action doctrine and other matters of federal jurisdiction and venue—holding that the law of the state in which the property is located must govern in the determination of what constitutes local action. *See, e.g., Tr. Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144 (5th Cir. 1991). Accordingly, analysis under New Mexico law regarding local action, subject matter jurisdiction, and venue is necessary prior to sending this case to the Southern District of Texas.

---

[7] This is in contrast to the usual rule (which is that federal law, not state law, controls the outcome of subject matter jurisdiction and venue disputes). *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) (requiring federal courts to apply state substantive law but federal procedural laws). The local action doctrine, to the extent it is still alive, is a procedural matter. *See Fisher*, 243 F. Supp. 2d at 545 (citing 17 MOORE'S FEDERAL PRACTICE—CIVIL § 110.20).

11

## 2. The local action doctrine in New Mexico

In 1851, the Territorial Legislature of New Mexico mandated venue according to "the location of the person, place, thing, or transaction at issue." *Kaywal, Inc. v. Avangrid Renewables, LLC*, 2021-NMCA-037, ¶ 23, 495 P.3d 550 (N.M. Ct. App. 2021) (citing 1865 Rev. Stat and Laws, art. XII, ch. XXVII, § 7 (1851)). Then, in 1876, the Legislature enacted a new venue statute distinguishing between local and transitory actions. *Kaywal, Inc.*, 2021-NMCA-037, ¶ 24 (citing 1875–76 N.M. Laws, ch. II. § 1 (1876)). In the many years that have followed, the salient provisions of the venue statute have remained intact. Section 38-3-1, like its predecessors, incorporates the common law understanding of the local action doctrine. *See* NMSA 1978 § 38-3-1 (2023). Given this backdrop, it was well understood that common law actions based on contracts were regarded as transitory. *Cooper v. Chevron U.S.A., Inc.*, 2002-NMSC-020, ¶ 27, 132 N.M. 382, 49 P.3d 61 (N.M. 2002) (Serna, C.J., dissenting). And the "Legislature is presumed to know the existing common law" at the time of a given law's passage. *Methola v. Cnty. of Eddy, N.M.*, 1980-NMSC-145, ¶ 20, 95 N.M. 329, 622 P.2d 234 (N.M. 1980). The transitory nature of contract disputes under New Mexico law was settled when the New Mexico Supreme Court held that when the "controlling issue" is based on a contract instead of the real property itself, the action is transitory. *See Team Bank v. Meridian Oil, Inc.*, 1994-NMSC-083, ¶ 6, 118 N.M. 147, 879 P.2d 779 (N.M. 1994). Of particular consequence, the New Mexico Supreme Court held that their venue statute is *not* jurisdictional. *See Kalosha v. Novick*, 1973-NMSC-010, ¶¶ 12, 24, 84 N.M. 502, 505 P.2d 845 (N.M. 1973) (holding § 21-5-1, the precursor to § 38-3-1, dealt "merely with venue" as opposed to jurisdiction); *see also* **Doc. 23 at 5 n.3**. In fact, the Court of Appeals determined that Subsection (D) of the venue statute should not be "strictly construed" just because the action

related "in some way to land." *Kaywal, Inc.*, 2021-NMCA-037, ¶ 41 (citing NMSA 1978 § 38-3-1(D)(1)).

**3. A Texas court has subject matter jurisdiction under New Mexico law of this *in personam* transitory action seeking an equitable remedy**

Clearly the transaction on which the present action is based is the 2019 Agreement. This transaction could have occurred anywhere and is therefore transitory in nature. *Livingston*, 15 F. Cas. at 664. In arriving at this conclusion, the Court's analysis is not governed by the label placed upon the cause of action. Plaintiffs' claim must be resolved through an interpretation of the Agreement—and Texas law does not prevent enforcement of a forum selection clause even if the underlying contractual interests are in another state. *Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) (explaining that when the Parties' dispute involved a contract related to real property, the local action rule did not control).

"[A] prayer for equitable remedies *in rem* does not convert a cause of action *in personam* to a cause of action *in rem*." *Rountree v. Nunnery (In re Rountree)*, 448 B.R. 389, 402 (Bankr. E.D. Va. 2011). Actions are truly "local" when the transaction could "*only* have occurred at the land in site." *Fisher v. Va. Elec. & Power Co.*, 243 F. Supp. 2d 538, 553 (E.D. Va. 2003). But a court of equity can enforce a personal obligation regardless of the location of the real property. *Massie*, 10 U.S. (6 Cranch) at 158–60.

As explained above, in 2019 the Parties anticipated claims might arise from the Agreement. The Parties agreed that such claims would be subject to the forum selection clause. That expectation should be given effect.

**III. Forum Selection Clause**

Typically, the Court weighs a handful[8] of discretionary factors when considering a motion to transfer under § 1404(a). *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010). But Plaintiffs "cannot defeat a forum-selection clause by its choice of provisions to sue on [or] legal theories to press." *Kelvion, Inc. v. Petrochina Can., Ltd.*, 918 F.3d 1088, 1093 (10th Cir. 2019) (citation omitted). Likewise, "artful pleading" of the cause of action does not defeat a forum selection clause. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983).

The forum selection clause at issue here is mandatory, as evidenced by the use of the word "shall" in the Agreement (**Doc. 5 at 3; Doc. 6-1 at 8**). *See Am. Soda, LLP v. U.S. Filter Wastewater Grp., Inc.*, 428 F.3d 921, 926 (10th Cir. 2005) ("[M]andatory forum selection clauses contain clear language showing that jurisdiction is appropriate only in the designated forum.") (citation omitted); *see also Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992) ("The use of the word 'shall' generally indicates a mandatory intent.").

Because Plaintiffs' claims are rooted in alleged errors in the "settlement documents," **Doc. 1-2**, this cause of action stems from the contractual relationship itself, namely: the Agreement. The Parties bargained for Texas as their forum when "seeking the interpretation or enforcement of this Agreement." **Doc. 5 at 3; Doc. 6-1 at 8**. The forum selection clause covers the contractual reformation claim—thus, the clause "should be given controlling weight." *Atl. Marine Constr. Co.,*

---

[8] The Tenth Circuit weighs the following nine factors: (1) the plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *See Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

*Inc.*, 571 U.S. at 62 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

Plaintiffs ask the Court to reform the Assignment (**Doc. 5-1 at 13–22**) of mineral rights conveyed pursuant to the Agreement (**Doc. 6-1**). The Assignment, however, was "made expressly subject to" the Agreement and states that "[i]n the event that this Assignment and the Settlement Agreement and Release include conflicting terms, the terms of the Settlement Agreement and Release will prevail to the extent of such conflict." **Doc. 5-1 at ¶ 13**. Likewise, the Assignment superseded all other "communications, negotiations, representations, or agreements." *Id*. The Agreement required that Defendant execute the Assignment—which he did. **Doc. 6-1 at 2 ¶ A**. Moreover, the Agreement superseded "any and all prior agreements, arrangements, or understandings" between the Parties. **Doc. 6-1 at 7 ¶ P**. Unfortunately for Plaintiffs, "signing a contract with a forum selection clause" carries with it profound consequences. *Mallory v. Norfolk S. Ry. Co.*, 143 S. Ct. at 2044.

The Agreement is clear. **Doc. 6-1 at 8**. The events or omissions regarding the alleged drafting errors in the Agreement are not "local" to New Mexico. Accordingly, venue is proper in the United States District Court for the Southern District of Texas, Houston Division.

## CONCLUSION

For the reasons set forth above, the Court finds that the forum selection provision in the Agreement entered into by Plaintiffs and Defendant is valid and enforceable, mandatory, and applicable. The Court further finds that under Section 1404(a), transfer of this case to the United States District Court for the Southern District of Texas, Houston Division is appropriate and in the interests of justice, convenience, and fairness.

**THEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Transfer Venue (**Doc. 5**) is hereby **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court take the necessary steps to **TRANSFER** this case to the United States District Court for the Southern District of Texas, Houston Division.

**IT IS SO ORDERED.**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE